IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| David M Boswell, Jr. (R-47066), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16 C 9070 |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| Lt. Sullivan, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff's motion and affidavit to proceed in district court without prepaying fees and costs [3] is granted. The Court orders the trust fund officer at Plaintiff's place of incarceration to deduct $13.90 from Plaintiff's account for payment to the Clerk of Court as an initial partial payment of the filing fee, and to continue making monthly deductions in accordance with this Order. The Clerk of Court shall send a copy of this Order to the trust fund officer at the Pontiac Correctional Center. The Court further directs the Clerk of Court to: (1) file Plaintiff's complaint [1]; (2) dismiss and terminate Defendants Anna McBee, John Doe Number 1, John Doe Number 2, J Burzinski, C Bell, J Alberts, Jackson, Joshua J Clements, Clarence D Wright, Sytera L Sanders, Duvall, N. Lamb, Tarry D Williams, T. Scott Keen, and John R Baldwin; (3) issue summonses for service on Defendants Lt. Sullivan and C/O Muniz by the U.S. Marshal; and (4) send Plaintiff two blank USM-285 service forms, a magistrate judge consent form, filing instructions, and a copy of this Order. The Court advises Plaintiff that a completed USM-285 (service) form is required for each Defendant for whom summons has issued (Sullivan and Munoz). The U.S. Marshal will not attempt service on a Defendant unless and until the required form is received. The U.S. Marshal is appointed to serve Defendants Lt. Sullivan and C/O Munoz. Plaintiff's motion for attorney representation [4] is denied without prejudice to renewal later in this case.

**STATEMENT**

Plaintiff David Boswell, Jr., a prisoner now confined at the Pontiac Correctional Center, brings this pro se civil rights action pursuant to 42 U.S.C. §1983, regarding an attack on him by another inmate while he was previously incarcerated at Stateville Correctional Center. Plaintiff alleges that, on the evening of March 31, 2015, he was housed in segregation with prisoner Maholmes as his cellmate. Maholmes "learned" that Plaintiff had previously been housed in "'X'

House," pending approval for protective custody, which Maholmes believed to indicate that Plaintiff had "snitched," i.e., provided information to internal affairs. "After a brief conversation, it became apparent that d[ue] to his knowledge that I had provided information . . . and my desire to no longer be a violent person, that we could no longer co-exist in the same cell together" and existed in a "state of paranoia toward each other." [1] at 7. They then agreed that Plaintiff should "let staff know about the situation and that a fight was" imminent if they remained cellmates. Therefore, at 7 p.m., Plaintiff notified Lt. Sullivan, who was delivering his food tray, of the reasons for their disagreement and that "violence was now imminent." *Id*. Plaintiff requested to be moved, and Lt. Sullivan walked away without a response. *Id*. at 7-8. Tensions escalated after Plaintiff wrote letters to "Mrs. Rabedaue" and to internal affairs requesting cell reassignment for his safety. *Id*. at 8. At 9:45-10:00 p.m., when he attempted to place those letters in the outgoing mail, Maholmes took the first letter and read it, then "became very irate and yelling" that Plaintiff was snitching on him. *Id*. Maholmes hit Plaintiff in the head, and Plaintiff restrained him. *Id*. They then both began to pack their belongings, while Plaintiff kept an eye out for another correctional officer. C/O Munoz walked by, and Plaintiff stopped him and told him about the fight and requested to be moved before another fight occurred. *Id*. at 9. C/O Munoz said he would notify Lt. Sullivan, left, and did not return. *Id*. Immediately after that, "Maholmes declared the fight was not over and came to attack [Plaintiff] again, and [Plaintiff] fought back," prompting Maholmes to grab an a/c adapter in a sock and swing it at Plaintiff, striking him in the head. *Id*. This "assault with a potentially deadly weapon" "outraged" Plaintiff, who then "charged" Maholmes to "tussle." *Id*. They then mutually "agreed the fight was over." *Id*.

When the guards changed shifts at 11:00 p.m., Plaintiff flagged down the first officer who passed by his cell. *Id*. at 10. That officer separated the cellmates and got medical attention for Plaintiff, whose head was bleeding. *Id*. Plaintiff was written a disciplinary ticket and was found guilty of a disciplinary infraction of fighting related to the incident. *Id*. at 10-12. Plaintiff served an "extra" 30 days in segregation due to the disciplinary finding. *Id*. at 15. Plaintiff alleges that the disciplinary finding was based upon incorrect facts and a failure to properly investigate, and he complains that his story was not credited. *Id*. at 12-14. Plaintiff brought this lawsuit, holding Defendants Lt. Sullivan and C/O Muniz responsible for failing to protect him from his cellmate's attack after he reported their disagreement. The remaining Defendants were involved in the disciplinary proceedings in some manner, and he holds them responsible for failing to discover the truth and vindicate him as to the disciplinary ticket. Plaintiff seeks damages for his pain and suffering, the expungement of his disciplinary record related to the incident, and injunctive and other relief. Currently before the Court are Plaintiff's motion and affidavit seeking leave to proceed without prepaying fees and costs [3],

his complaint [1] for initial review under 28 U.S.C. §1915A, and his motion for attorney representation [4].

Plaintiff's motion for leave to proceed without prepaying fees and costs [3] demonstrates that he cannot prepay the filing fee and is thus granted. Pursuant to 28 U.S.C. §1915(b)(1), (2), the Court orders: (1) Plaintiff to immediately pay (and the facility having custody of him to automatically remit) $13.90 to the Clerk of Court for payment of the initial partial filing fee and (2) Plaintiff to pay (and the facility having custody of him to automatically remit) to the Clerk of Court twenty percent of the money he receives for each calendar month during which he receives $10.00 or more, until the $350 filing fee is paid in full. The Court directs the Clerk of Court to ensure that a copy of this Order is mailed to each facility where Plaintiff is housed until the filing fee has been paid in full. All payments shall be sent to the Clerk of Court, United States District Court, 219 South Dearborn Street, Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and shall clearly identify Plaintiff's name and the case number assigned to this case.

Under 28 U.S.C. §§1915(e)(2) and 1915A(a), the Court is required to screen *pro se* prisoners' complaints and dismiss the complaint, or any claims therein, if the Court determines that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013).

Courts screen prisoner litigation claims in the same manner as ordinary Federal Rule of Civil Procedure 12(b)(6) motions to dismiss. *See Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

"In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller*

3

*Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013). Courts also construe *pro se* complaints liberally. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam).

Here, accepting Plaintiff's factual allegations as true, the Court finds that the complaint states a colorable federal cause of action against Lt. Sullivan and C/O Munoz. "Jail officials have a duty to protect inmates from violent assaults by other inmates," *Rice ex rel. Rice v. Corr. Med. Serv.,* 675 F.3d 650, 669 (7th Cir. 2012) (citing *Farmer v. Brennan,* 511 U.S. 825, 833 (1988)); *see also Grieveson v. Anderson,* 538 F.3d 763, 775 (7th Cir. 2008) (stating that jail officials have duty to protect pretrial detainees from violence by other detainees); *Swofford v. Mandrell,* 969 F.2d 547, 549 (7th Cir. 1992) (similar), and may be liable if they are deliberately indifferent to threats to detainees' safety. *See Guzman v. Sheahan,* 495 F.3d 852, 857 (7th Cir. 2007)). Jails, however, "are dangerous places often full of people who have demonstrated aggression," *Dale v. Poston,* 548 F.3d 563, 569 (7th Cir. 2008), and "[a] prison official is liable for failing to protect an inmate from another prisoner only if the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Gevas v. McLaughlin,* 798 F.3d 475, 480 (7th Cir. 2015) (citing *Farmer,* 511 U.S. at 837). "Complaints that convey only a generalized, vague or stale concern about one's safety typically will not support an inference that the official had actual knowledge that the prisoner was in danger," while "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Id.* at 480-81 (discussing cases, citations omitted). "[N]egligence is not enough." *Smith v. Sangamon Cty. Sheriff's Dep't,* 715 F.3d 188, 191 (7th Cir. 2014) (citations omitted). Further, because §1983 requires a defendant's personal involvement in the alleged constitutional violation, *see Matz v. Klotka,* 769 F.3d 517, 528 (7th Cir. 2014), supervisory official cannot be held liable for the conduct of his subordinates based merely on a theory of *respondeat superior* without any indication that the supervisory official was somehow personally involved in the constitutional deprivation. *See Gayton v. McCoy,* 593 F.3d 610, 622 (7th Cir. 2010); *Perkins v. Lawson,* 312 F.3d 872, 875 (7th Cir. 2002).

Here, although later factual development may belie Plaintiff's claims, his allegation that he told both Lt. Sullivan and C/O Munoz that he was in danger from his cellmate and presented a credible reason for his fear, *see Dale v. Poston,* 548 F.3d 563, 570 (7th Cir. 2008) (noting that "it's common knowledge that snitches face unique risks in prison"), arguably provided sufficiently concrete information of a particular and immediate threat to Plaintiff's safety, from a particular inmate, to put these defendants on notice. *See Gevas,* 798 F.3d at 481 (holding that plaintiff's evidence that he told defendants that particular inmate threatened to stab him after accusing him of being a snitch was sufficient to demonstrate a fact question regarding their actual knowledge of risk). Plaintiff allegedly informed both of these

4

Defendants that an altercation was imminent, and he informed C/O Muniz that the cellmates had already fought. Neither Defendant returned prior to the shift change that evening, allowing a plausible inference of deliberate indifference. Accordingly, Plaintiff may proceed on a failure-to-protect claim against these defendants. He may not, however, proceed on the existing complaint as to any other defendants regarding a failure to protect, as he does not suggest that any other defendant knew of a danger to him from his cellmate prior to either physical dispute.

Plaintiff also may not proceed as to any due process claim regarding the disciplinary proceedings and procedures that resulted in a finding that he had engaged in fighting and the imposition of a thirty-day segregation term. The due process clause, after all, does not guard against "every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)). Instead, due process protections extend only to those conditions posing an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, meaning that courts examine the prison disciplinary procedures only where the penalty faced by the prisoner implicates a protected liberty interest. *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005). Allegations that an inmate served a short segregation term, absent facts suggesting particularly onerous conditions, generally do not implicate a liberty interest. *See id.* (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days, "a relatively short period when one considers his 12 year prison sentence"); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) ("[W]e have affirmed dismissal without requiring a factual inquiry into the conditions of confinement."); *Means v. Larson*, 580 Fed. App'x. 481, 482 (7th Cir. 2014) ("But Means' term of just over one month, by itself, did not implicate a liberty interest."); *see also Reed v. Kirk*, No. 12 C 8582, 2016 WL 3476659, at *11 (N.D. Ill. June 27, 2016) (holding that Plaintiff's mere 30-day segregation confinement did "not implicate a liberty interest"). Here, the bare fact that Plaintiff served a mere thirty days in segregation as a result of the allegedly flawed disciplinary proceedings does not implicate a liberty interest.

Accordingly, pursuant to the foregoing, Defendants Lt. Sullivan and C/O Munoz must respond to the existing complaint as to Plaintiff's claim of failure to protect him from a known danger of attack from another inmate. All other Defendants and claims are dismissed. Nothing in this order, which is based on preliminary review of the complaint, precludes any legal argument that Defendants may advance in response to Plaintiff's allegations.

The Court directs the Clerk to issue summonses for service of the complaint on Defendants Lt. Sullivan and C/O Munoz. The Clerk of Court is directed to mail Plaintiff two blank USM-285 (U.S. Marshals service) forms. The Court advises Plaintiff that a completed USM-285 form is required for each Defendant for whom

summons has issued (Lt. Sullivan and C/O Munoz). The U.S. Marshal will not attempt service on a Defendant unless and until the required form is received. Plaintiff must therefore complete and return a service form for each Defendant for whom summons has issued, and failure to do so may result in the dismissal of the unserved Defendant, as well as dismissal of this case in its entirety for lack of prosecution.

The Court appoints the U.S. Marshals Service to serve Defendants Lt. Sullivan and C/O Munoz. The Court directs the U.S. Marshal to make all reasonable efforts to serve Defendants. With respect to any former employee of the Stateville Correctional Center who can no longer be found at the work address provided by Plaintiff, officials there must furnish the U.S. Marshal with the Defendant's last-known address. The U.S. Marshal will use the information only for purposes of effectuating service or to show proof of service, and any documentation of the address shall be retained only by the U.S. Marshal. Address information will not be maintained in the Court file nor disclosed by the U.S. Marshal, except as necessary to serve Defendants. The U.S. Marshal is authorized to send a request for waiver of service to Defendants in the manner prescribed by Federal Rule of Civil Procedure 4(d) before attempting personal service.

The Court instructs Plaintiff to file all future papers concerning this action with the Clerk of this Court in care of the Prisoner Correspondent. In addition, Plaintiff must send an exact copy of any document he files in this Court to Defendants or to defense counsel if an attorney has entered an appearance on behalf of Defendants. Every document submitted by Plaintiff must include a certificate of service stating to whom exact copies were sent and the date of mailing. Any letters or other documents sent directly to a judge or that otherwise fail to comply with these instructions may be disregarded by the Court or returned to Plaintiff.

Plaintiff's motion seeking attorney representation [4] is denied at this time. Although "[t]here is no right to court-appointed counsel in federal civil litigation," *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), the Court has discretion to request that an attorney represent an indigent litigant on a volunteer basis under 28 U.S.C. §1915(e)(1). In making the decision whether to recruit counsel, the Court must engage in a two-step analysis, asking first whether the plaintiff has made a reasonable attempt to obtain counsel on his own behalf or been effectively precluded from doing so; and, if so, asking whether, given the factual and legal complexity of the case, this particular plaintiff appears competent to litigate the matter himself. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007) (en banc). This analysis does not focus solely on the plaintiff's ability to try the case, but on his ability to gather evidence and prepare and respond to motions. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013).

Factors to be considered include: (1) the stage of litigation, *Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010) (holding that it is difficult to make an accurate determination regarding a plaintiff's ability to litigate the matter when case is still in "its infancy"); (2) plaintiff's submissions and pleadings, *Olson*, 750 F.3d at 712 (well-written pleadings and appearance that plaintiff can follow instructions indicate that counsel is not needed); (3) the existence of medical and mental health issues, *Olson*, 750 F.3d at 712; (4) whether there has been a transfer to a different facility, *Junior v. Anderson*, 724 F.3d 812, 815 (7th Cir. 2013) (transfer to a different facility may impede plaintiff's ability to obtain evidence including affidavits/declarations from others to support his/her claim); (5) plaintiff's capabilities, including intelligence (IQ), literacy, degree of education, communication skills, and litigation experience, *Pruitt*, 503 F.3d at 655; *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 658 (7th Cir. 2014) (recruitment of counsel required for a blind inmate with a tenth-grade education); *Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014) (enlistment of counsel was necessary for a functionally illiterate inmate); and (6) the complexity of the case, *Dewitt*, 760 F.3d at 658; *Henderson*, 755 F.3d at 566; *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010); *Pruitt*, 503F.3d at 655-56.

After considering the above factors, the Court concludes that solicitation of counsel for Plaintiff is not currently warranted. Plaintiff indicates that he has written to multiple law firms seeking representation but has received no responses from most and a few unfavorable responses from those who did respond. Examining the relevant factors with the information the Court currently possesses, including the clarity of Plaintiff's initial submissions, it does not appear that Plaintiff requires the assistance of counsel at this time. Defendants have yet to answer. This case remains in its infancy, and the Court has little information at this early stage to gauge Plaintiff's educational level or ongoing ability to represent himself as the case progresses. *See Romanelli*, 615 F.3d at 852. Accordingly, Plaintiff's motion is denied without prejudice to later renewal.

Date: October 18, 2016

                                                      ENTERED:

                                                      John Robert Blakey
                                                    United States District Judge